# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————

## Case No. 24-_1285_____

—————

AMERICAN ELECTRIC POWER SERVICE CORPORATION AND
XCEL ENERGY SERVICES INC.,
PETITIONERS,

*v.*

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT.

—————

## PETITION FOR REVIEW

—————

Pursuant to Federal Rule of Appellate Procedure 15(a) and section 313(b) of the Federal Power Act ("FPA"), 16 U.S.C. 825*l*(b), Petitioners American Electric Power Service Corporation, on behalf of its affiliates Southwestern Electric Power Company and Public Service Company of Oklahoma, and Xcel Energy Services Inc., on behalf of Southwestern Public Service Company hereby petition this Court for review of the following order and notice issued by Respondent Federal Energy Regulatory Commission ("FERC") in Docket Nos. ER24-1583-000 and ER24-1583-001, respectively:

(1)  *Southwest Power Pool, Inc.*, 187 FERC ¶ 61,123 (2024) ("May 31 Order"); and

(2)    *Southwest Power Pool, Inc.*, 188 FERC ¶ 62,057 (2024) ("August 1 Notice").

Copies of the May 31 Order and August 1 Notice are appended to this Petition as Attachments A and B, respectively.[1]

The May 31 Order accepted tariff revisions proposed by Southwest Power Pool, Inc. ("SPP") to alter the allocation of costs associated with certain electric transmission facilities in the multi-state region for which SPP acts as the Regional Transmission Operator. Petitioners timely requested rehearing of the May 31 Order on July 1, 2024. On August 1, 2024, the FERC Acting Secretary issued the August 1 Notice advising that all rehearing requests submitted in the underlying FERC proceedings are deemed denied by operation of law pursuant to FPA section 313(a), 16 U.S.C. § 825*l*(a), and "will be addressed in a future order to be issued consistent with the requirements of such section."

This Petition is timely, and this Court has venue and subject matter jurisdiction under FPA section 313(b). Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Petitioners have

---

[1] Several other parties have already filed petitions for review of the May 31 Order and August 1 Notice in this Court. Those petitions were docketed as Case Nos. 24-1270, 24-1282, and 24-1283 and have been consolidated under Case No. 24-1270.

also appended Corporate Disclosure Statements as Attachment C and a Certificate of Service with a list of parties to the underlying FERC proceedings as Attachment D.

Dated: August 28, 2024

Respectfully submitted,

/s/ *Christopher R. Jones*

C. Dixon Wallace III
TROUTMAN PEPPER
HAMILTON SANDERS LLP
1001 Haxall Point, Suite 1500
Richmond, VA 23219
(804) 697-2279
dixon.wallace@troutman.com

Christopher R. Jones
S. Jennifer Panahi
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th St., NW, Suite 1000
Washington, DC 20004
(202) 662-2181
chris.jones@troutman.com
jennifer.panahi@troutman.com

*Counsel for American Electric Power Service Corporation, on behalf of Southwestern Electric Power Company and Public Service Company of Oklahoma, and Xcel Energy Services Inc., on behalf of Southwestern Public Service Co.*

Timothy T. Mastrogiacomo
Area Vice President, Legal
XCEL ENERGY SERVICES INC.
701 Pennsylvania Ave. NW
Ste. 250
Washington, DC 20006
(202) 661-4481
tim.t.mastrogiacomo@xcelenergy.com

Carrie L. Bumgarner
Senior Counsel
AMERICAN ELECTRIC POWER
SERVICE CORPORATION
1 Riverside Plaza
Columbus, OH 43215
(614) 716-2941
clbumgarner@aep.com

*Counsel for Xcel Energy Services Inc., on behalf of Southwestern Public Service Co.*

*Counsel for American Electric Power Service Corporation, on behalf of Southwestern Electric Power Company and Public Service Company of Oklahoma*

- 3 -

**Attachment A**

187 FERC ¶ 61,123
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Willie L. Phillips, Chairman;
                        Allison Clements and Mark C. Christie.

Southwest Power Pool, Inc.                    Docket No.  ER24-1583-000

ORDER ACCEPTING TARIFF REVISIONS

(Issued May 31, 2024)

1.      On March 20, 2024, pursuant to section 205 of the Federal Power Act (FPA)[1] and section 35.13 of the Commission's regulations,[2] Southwest Power Pool, Inc. (SPP) submitted proposed revisions to Attachment J (Recovery of Costs Associated with New Facilities) of its Open Access Transmission Tariff (Tariff) to add Schedule 3 to allow the remaining annual transmission revenue requirement (ATRR) for certain transmission facilities to be entirely allocated on a regional, postage-stamp basis.  In this order, we accept SPP's proposed Tariff revisions, effective June 1, 2024, as requested.

I.      **Background**

        A.      **Highway/Byway Cost Allocation**

2.      In 2010, the Commission accepted SPP's proposal to implement its Highway/Byway cost allocation method (Highway/Byway method),[3] under which SPP allocates the costs of transmission facilities on a voltage threshold basis.[4]  For transmission facilities at 300 kV or above (Highway facilities), SPP allocates 100% of the costs on a regional, postage-stamp basis.[5]  For transmission facilities between 100 kV and

---

[1] 16 U.S.C. § 824d.

[2] 18 C.F.R. § 35.13 (2023).

[3] *Sw. Power Pool, Inc.*, 131 FERC ¶ 61,252 (2010) (Highway/Byway Order), *reh'g denied*, 137 FERC ¶ 61,075 (2011).

[4] Generally, the Highway/Byway method applies to transmission facilities included in and constructed pursuant to SPP's Transmission Expansion Plan to ensure the reliability of SPP's transmission system, certain other qualifying network upgrades, and high priority upgrades.  SPP, Tariff, attach. J, § III (16.0.0), § III.A.2.

[5] The Commission has explained that "postage-stamp" "refers to regionwide

Document Accession #: 20240531-3055          Filed Date: 05/31/2024

300 kV (Byway facilities), SPP allocates 33% of the costs on a regional, postage-stamp basis and 67% of the costs to the SPP pricing zone in which the facilities are located. For transmission facilities at or below 100 kV, SPP allocates 100% of the costs to the zone in which the facilities are located.[6]

3.      In its order accepting the Highway/Byway method, the Commission also accepted SPP's revisions to its unintended consequences review process, which is now known as the Regional Cost Allocation Review (RCAR) process.[7] The RCAR process requires SPP to review the reasonableness of cost allocations under the Highway/Byway method at least every six years. During the RCAR process, SPP determines the cost allocation impacts in each SPP pricing zone, generally in the form of a benefit-to-cost ratio.

### B.      SPP's 2021 Proposal (Docket No. ER21-1676)

4.      In 2021, SPP filed a proposal to establish a process through which entities could petition the SPP Board of Directors (SPP Board) to approve, on a case-by-case basis: (1) the prospective reallocation of the costs of existing Byway facilities; or (2) the full allocation of the costs of new Byway facilities so that their costs would be allocated as if they were Highway facilities. The Commission rejected SPP's proposal, finding that it would grant the SPP Board too much discretion in allocating the costs of Byway facilities without clear standards for how its cost allocation decisions would be made.[8] The Commission stated that the proposed Tariff language did not contain objective standards, criteria, or thresholds for the SPP Board's decision and that without clear criteria, the SPP Board would have "too much discretion to make decisions with significant cost and rate

---

allocation of the cost of a transmission facility." *Transmission Plan. & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, Order No. 1000, 136 FERC ¶ 61,051, at P 741 n.543 (2011), *order on reh'g*, Order No. 1000-A, 139 FERC ¶ 61,132, *order on reh'g & clarification*, Order No. 1000-B, 141 FERC ¶ 61,044 (2012), *aff'd sub nom. S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014).

[6] SPP, Tariff, attach. J, § III (16.0.0), § III.A.2.i. For network upgrades associated with designated resources that are wind generation resources where the upgrade is located in a different zone than the point of delivery, the costs of transmission facilities 300 kV and above are allocated 100% to the region, and the costs of facilities below 300 kV are allocated 67% to the region and 33% to the transmission customer. *Id.* §§ III.A.3, III.A.4.

[7] Highway/Byway Order, 131 FERC ¶ 61,252 at P 83.

[8] *Sw. Power Pool, Inc.*, 175 FERC ¶ 61,198, at PP 38-39 (2021) (First Rejection Order).

implications, without assurance that the cost allocation decisions will result in rates that are just and reasonable and not unduly discriminatory or preferential."[9]

### C.     SPP's 2022 Proposal (Docket No. ER22-1846)

5.      On May 10, 2022, SPP filed a revised proposal to establish a process in SPP's Tariff through which, on a case-by-case basis, the costs of Byway facilities could be fully allocated to the SPP region on a 100% regional, postage-stamp basis, and specified certain evaluation criteria that would need to be satisfied for the reallocation (SPP's 2022 Proposal).  SPP's proposed Tariff revisions specified that to be eligible for such cost allocation, an entity would submit a written request to SPP, along with supporting information and analysis detailing how the Byway facility or facilities that were the subject of the application satisfied a Capacity Criterion, Flow Criterion, and Benefit Criterion.  To meet the Capacity Criterion, an applicant would need to show that the total nameplate capacity of generating resources physically connected in the zone where the Byway facility was located (and that was not affiliated with load in that zone) exceeded 100% of the prior calendar year's average 12 monthly coincident peak resident load (12-CP Load) used in calculating the base plan zonal load ratio share[10] for the zone.[11]  To meet the Flow Criterion, an applicant would need to show that the energy flow on each Byway facility attributable to generating resources that were physically connected in the zone where the Byway facility was located but that were not affiliated with load in that zone exceeded 70% of the sum of flows on the Byway facility attributable to: (1) generating resources affiliated with the load in the zone where the Byway facility was located; and (2) generating resources that were physically connected in the zone and not affiliated with load in the zone.[12]  Lastly, to meet the Benefit Criterion, an applicant would need to show that the Byway facility provided benefits to load outside the pricing zone where the Byway facility was located exceeding either:  (1) 50% of the Byway facility's projected total benefit to load in the SPP region; or (2) the portion of the Byway facility's annual revenue requirement projected to be borne by load outside the Byway

---

[9] *Id*. P 39.

[10] SPP defines "Base Plan Zonal Load Ratio Share" as the "Ratio of a Network Customer's or Transmission Owner's Resident Load in a Zone to the total load in that Zone computed in accordance with Section II.B to Schedule 11 of this Tariff and calculated on a calendar year basis, for the prior calendar year.  Customer loads used to determine the Base Plan Zonal Load Ratio Share shall be adjusted for real power losses in accordance with the provisions set out in Section 28.5 of this Tariff."  SPP, Tariff, Definitions B, 1 Definitions B (6.0.0).

[11] SPP, 2022 Proposed Tariff, attach. J, § III.E.2.a (13.1.0).

[12] *Id.* § III.E.2.b.

facility's zone under 100% regional, postage-stamp cost allocation.[13]  Under the proposal, benefits could be quantified in terms of adjusted production cost savings or savings through SPP's Integrated Marketplace.

6.     On October 28, 2022, the Commission accepted SPP's proposed Tariff revisions, subject to condition, effective August 1, 2022, and directed SPP to submit a compliance filing.[14]  The Commission found that SPP's proposal to establish a process through which, on a case-by-case basis, the costs of Byway facilities could be fully allocated to the SPP region on a postage-stamp basis was just and reasonable and not unduly discriminatory or preferential because it would help ensure that the costs of Byway facilities were allocated in a manner that was at least roughly commensurate with estimated benefits, consistent with the cost causation principle.[15]  Moreover, the Commission found that allocating 100% of a Byway facility's costs to the SPP region on a postage-stamp basis if the facility was shown to provide significant benefits to zones other than the zone in which the Byway facility was located would better align the allocation of the costs of the Byway facility with its beneficiaries.[16]  The Commission, however, found that two aspects of the proposed Tariff revisions did not provide sufficient specificity about the limitations on SPP's discretion articulated by SPP in response to a deficiency letter in the proceeding.  The Commission directed SPP to submit a further compliance filing to propose additional Tariff language to limit SPP's discretion.[17]

### D.     **Sunflower's Application**

7.     On November 22, 2022, as supplemented on January 27, 2023, in accordance with SPP's process that the Commission accepted in the Initial Acceptance Order, Sunflower Electric Power Corporation (Sunflower) applied for 100% regional, postage stamp cost allocation for four Byway facilities (Sunflower Byway Facilities).[18]  In its application,

---

[13] *Id.* § III.E.2.c.

[14] *Sw. Power Pool, Inc.*, 181 FERC ¶ 61,076 (2022) (Initial Acceptance Order).

[15] *Id.* PP 47-48.

[16] *Id.* P 48.

[17] *Id.* PP 54-55.

[18] The Sunflower Byway Facilities are base plan upgrades (i.e., Highway/Byway facilities) located in the Sunflower Zone and consist of:  (1) Ellsworth-Rice 115 kV, Ellsworth Substation 115 kV, and Ellsworth Tap 115 kV Ring Bus; (2) Mingo 345/115 kV Ckt 2 Transformer; (3) Anthony-Harper 138 kV Ckt 1; and (4) Anthony-Bluff City

Document Accession #: 20240531-3055     Filed Date: 05/31/2024

Sunflower submitted an analysis intended to demonstrate that the Sunflower Byway Facilities satisfied the Capacity, Flow, and Benefit Criteria.[19]  Accordingly, SPP posted a copy of Sunflower's application on the SPP website.  SPP staff conducted an engineering analysis of Sunflower's application, which SPP states confirmed that the Sunflower Byway Facilities met the Capacity, Flow, and Benefit Criteria.  On February 2, 2023, SPP staff recommended to the Cost Allocation Working Group, Regional State Committee, Members Committee, and SPP Board that they approve Sunflower's application.[20]  The Cost Allocation Working Group voted at their May 4, 2023 meeting to approve Sunflower's application.  The Regional State Committee was scheduled to vote on Sunflower's application at the July 24, 2023 meeting; however, on July 13, 2023, the Commission issued a rehearing order on SPP's 2022 Proposal.[21]

### E.     Rehearing Orders on SPP's 2022 Proposal

8.      On July 13, 2023, the Commission issued an order on rehearing that set aside the Initial Acceptance Order, rejecting SPP's proposal without prejudice, and dismissed SPP's compliance filing submitted in response to the Initial Acceptance Order.[22]  The Commission concluded that SPP's proposal, even as modified by the Commission's directives in the Initial Acceptance Order, continued to grant the SPP Board too much discretion to change which cost allocation method applied to specific Byway facilities after they had been selected as Byway facilities.[23]

9.      On August 14, 2023, Sunflower, Basin Electric Power Cooperative (Basin Electric), Midwest Energy, Inc. (Midwest Energy), and Kansas Electric Power Cooperative, Inc. (KEPCo) filed a request for rehearing of the July 2023 Rehearing Order.  On December 19, 2023, the Commission issued an order on the July 2023

---

138 kV Ckt 1, Bluff City-Caldwell 138 kV Ckt 1, Caldwell-Mayfield 138 kV Ckt 1, Mayfield-Milan 138 kV Ckt 1, and Viola 138 kV Line Tap.

[19] SPP Transmittal at 18.

[20] *Id.* at 22.

[21] *Id.* at 27.

[22] *Sw. Power Pool, Inc.*, 184 FERC ¶ 61,028 (2023) (July 2023 Rehearing Order).

[23] *Id.* PP 50, 54.

Rehearing Order, which modified the discussion in the July 2023 Rehearing Order and sustained the result.[24]

## II.     Filing

10.     SPP submitted proposed revisions to Attachment J of its Tariff to add Schedule 3 to allow the remaining ATRRs for the Sunflower Byway Facilities to be entirely allocated on a regional, postage-stamp basis.  SPP argues that zones with "an abundance of wind generation" in comparison to demand, like the Sunflower Zone, can experience a "misalignment" between the costs of transmission assets allocated to them and the benefits that they receive from those transmission assets.[25]  SPP asserts that along with the increase in wind generation in the Sunflower Zone since 2011, the ATRR for the zone has also increased to recover the cost of new Byway facilities in the Sunflower Zone.  SPP claims that because 67% of Byway facilities' costs are allocated to the local zone, load in the Sunflower Zone is paying 67% of the cost for Byway facilities that are in some cases primarily used for exporting wind generation to other zones rather than primarily being used to support local load.  SPP contends that in such cases, allocating 67% of the cost of a Byway facility to the local zone may not be roughly commensurate with the benefits received, and thus it may be more appropriate that the costs of such upgrades be allocated regionally.[26]

11.     To address these concerns, SPP proposes to prospectively allocate the entire remaining ATRRs for the Sunflower Byway Facilities as if they were Highway facilities (i.e., 100% on a regional, postage stamp basis).  SPP explains that the Sunflower Byway Facilities' ATRRs, currently allocated to the Sunflower Zone, total $10,124,436.  SPP states that if the Sunflower Byway Facilities' remaining ATRRs are allocated as if they were Highway facilities, SPP zones other than the Sunflower Zone will have a net ATRR increase of $9,886,863.[27]

12.     In support of its proposal, SPP presents the analysis in Sunflower's application under SPP's tariff provisions that the Commission ultimately rejected in the July 2023 Rehearing Order (Sunflower's Analysis), SPP staff's analysis of Sunflower's application (SPP's Initial Analysis), and an updated SPP staff analysis of the Sunflower Byway Facilities (SPP's Updated Analysis), each of which evaluates whether the Sunflower

---

[24] *Sw. Power Pool, Inc.*, 185 FERC ¶ 61,189 (2023) (December 2023 Rehearing Order).

[25] SPP Transmittal at 10.

[26] *Id.* at 10-11.

[27] *Id.* at 38.

Byway Facilities satisfy the Capacity, Flow, and Benefit Criteria that SPP defined in SPP's 2022 Proposal. SPP asserts that, although the Commission ultimately rejected SPP's 2022 Proposal, the Commission never ruled that the Capacity, Flow, and Benefit Criteria were inappropriate, and thus SPP continues to use the same criteria in this proposal to demonstrate that the Sunflower Byway Facilities benefit the SPP region.[28]

13.     In analyzing whether the Sunflower Byway Facilities meet the Capacity Criterion,[29] for SPP's Initial Analysis, SPP states that the 12-CP Load for the Sunflower Zone in the 2021 calendar year was 905.3 MW, and the Sunflower Zone's total nameplate generation capacity unaffiliated with load in the zone was 3,296.8 MW. SPP calculated that the unaffiliated generation capacity is thus 364% of the Sunflower Zone's average 12-CP Load.[30] For SPP's Updated Analysis, SPP states that the 12-CP Load for the Sunflower Zone in the 2023 calendar year was 933 MW, and the Sunflower Zone's total nameplate generation capacity unaffiliated with load in the zone was 3,153 MW. SPP calculated that the unaffiliated generation capacity is thus 338% of the Sunflower Zone's average 12-CP Load. Thus, according to SPP's analyses, the Sunflower Zone exceeds the Capacity Criterion's requirement for unaffiliated generation to be greater than 100% of the prior year's 12-CP Load.[31]

14.     SPP states that it performed its analyses of the Flow Criterion utilizing results from power flow transfer distribution factor analysis and production cost analysis. SPP states that a power flow transfer distribution factor analysis was calculated for each of the Sunflower Byway Facilities, using each generator located in the Sunflower Zone as the power source. SPP explains that this provided the percentage of power that each transmission facility carries from each of the identified affiliated and unaffiliated generators.[32] According to SPP, SPP's Initial Analysis and SPP's Updated Analysis of the Flow Criterion, consistent with the Sunflower Analysis, showed that each Sunflower

---

[28] *Id.* at 28.

[29] SPP states that it performed SPP's Initial Analysis and SPP's Updated Analysis of the Capacity Criterion by first collecting data on generation nameplate capacity located in the Sunflower Zone from the Year 2 information in the 2023 and 2024 Integrated Transmission Plan Market Economic Models, respectively, for Future 1 and the average 12-CP Load reported in the January 2023 and 2024 revenue requirements and rates files. *Id.* at 23, 29.

[30] *Id.* at 23.

[31] *Id.* at 29.

[32] *Id.* at 23-24, 29-30.

Document Accession #: 20240531-3055     Filed Date: 05/31/2024

Byway Facility had power flow percentages greater than 70% for generation that was not affiliated with load in the zone, satisfying the Flow Criterion.[33]

15.     SPP states that it performed the Benefit Criterion analysis by comparing adjusted production costs with and without the Sunflower Byway Facilities across two future scenarios, using a 34-year net present value for SPP's Initial Analysis and a 33-year net present value for SPP's Updated Analysis.[34]  SPP states that SPP's Initial Analysis of the Benefit Criterion showed an average projected adjusted production cost benefit to SPP load outside the Sunflower Zone of $19.9 million, which is more than 314% of the $4.8 million average adjusted production cost benefit to all SPP load, including within the Sunflower Zone, which exceeds the threshold of 50% of total regional benefit to load that was necessary to satisfy the Benefit Criterion.[35]  Similarly, SPP asserts that SPP's Updated Analysis of the Benefit Criterion showed that the average projected adjusted production cost benefit to SPP load outside the Sunflower Zone was $144.3 million, as compared to the $69 million total adjusted production cost benefit to all SPP load, including within the Sunflower Zone, thus also exceeding the threshold of 50% of total regional benefit to load.[36]

16.     SPP argues that its proposal does not violate the rule against retroactive ratemaking because any changes in rates relating to the reallocation of costs will apply to future revenue requirements only.  SPP explains that the proposal is not changing rates that were on file with the Commission for settlement of past transactions, nor changing rates going forward to reallocate previous period revenue requirements collected from ratepayers.[37]

17.     SPP argues that its proposal is not inconsistent with the Commission's Order No. 1000 requirement that cost allocation rules be set *ex ante*.  SPP explains that this proposal prevents the continuation of a cost allocation that does not properly align with the cost causation principle.[38]

---

[33] *Id.* at 20, 24, 30-31.

[34] *Id.* at 25-26, 31-32.

[35] *Id.* at 26.

[36] *Id.* at 31-32.

[37] *Id.* at 35-36.

[38] *Id.* at 36-37.

### III.    Notice of Filing and Responsive Pleadings

18.    Notice of SPP's filing was published in the *Federal Register*, 89 Fed. Reg. 20,959 (Mar. 26, 2024), with interventions and protests due on or before April 10, 2024.

19.    Timely motions to intervene were submitted by the following entities:  American Electric Power Service Corporation (AEP), on behalf of its affiliates AEP Oklahoma Transmission Company, Inc., AEP Southwestern Transmission Company, Inc., Public Service Company of Oklahoma (PSO), and Southwestern Electric Power Company (SWEPCO); Basin Electric; City Utilities of Springfield, Missouri; Evergy Kansas Central, Inc., Evergy Metro, Inc., and Evergy Missouri West, Inc.; Kansas City Board of Public Utilities; KEPCo; Midwest Energy; Missouri Joint Municipal Electric Utility Commission; Oklahoma Gas and Electric Company (OG&E); Omaha Public Power District; Sunflower; Western Farmers Electric Cooperative; Western Kansas Industrial Electric Consumers (Western Kansas Industrial);[39] and Xcel Energy Services Inc. (Xcel), on behalf of its utility operating company affiliate Southwestern Public Service Company (SPS).

20.    Louisiana Public Service Commission (Louisiana Commission) and Kansas Corporation Commission (Kansas Commission) filed timely notices of intervention.

21.    On April 17, 2024, ITC Great Plains, LLC (ITC) submitted a late-filed motion to intervene.

22.    Sunflower, KEPCo, and Kansas Commission (collectively, Kansas Parties) filed joint comments in support.  Basin Electric, ITC, and Western Kansas Industrial separately filed comments in support.  City Utilities of Springfield, Missouri, Kansas City Board of Public Utilities, and Missouri Joint Municipal Electric Utility Commission (collectively, Municipal Utilities) filed a joint protest.  Louisiana Commission submitted a protest.  AEP, on behalf of PSO and SWEPCO, Xcel, on behalf of SPS, and OG&E (collectively, Indicated Transmission Owners) filed a joint protest.

23.    On April 25, 2024, Sunflower and KEPCo jointly submitted an answer to the protests (Sunflower/KEPCo April 25 Answer).  On April 30, 2024, SPP submitted an answer to the protests.  On May 8, 2024, Municipal Utilities submitted an answer to the SPP and Sunflower/KEPCo Answers.  On May 23, 2024, Sunflower and KEPCo submitted an answer to Municipal Utilities' answer (Sunflower/KEPCo May 23 Answer).

---

[39] Western Kansas Industrial include Air Products and Chemicals, Inc.; Cargill Incorporated; Messer; and National Beef Packaging Company, LLC.

A.      **Comments and Protests**

1.      **Supportive Comments**

24.     Several commenters[40] support SPP's proposal as a mechanism to correct what they view as the unreasonable and disproportionate allocation of the costs of transmission facilities associated with renewable resources to the zones in which they are located. They argue that SPP's proposal would more fairly assign costs among beneficiaries of the Sunflower Byway Facilities and those who cause the costs to be incurred, consistent with the cost causation principle.

25.     In particular, Basin Electric, ITC, Kansas Parties, and Western Kansas Industrial argue that the current cost allocation for the Sunflower Zone does not meet the Commission's requirement that costs and benefits be "roughly aligned" because load in the Sunflower Zone is responsible for paying for 67% of the costs of the Sunflower Byway Facilities, even though those facilities are being used primarily by load outside of the zone and confer a regional benefit.[41]  Basin Electric, ITC, Kansas Parties, and Western Kansas Industrial assert that approval of SPP's filing is necessary to correct this misaligned cost allocation, to be consistent with the principles of cost causation, and to ensure just and reasonable rates.[42]  Basin Electric, ITC, and Kansas Parties note that this section 205 filing allows the Commission, rather than the SPP Board, to determine whether the costs of the Sunflower Byway Facilities should be allocated prospectively on a regional, postage-stamp basis.[43]

26.     Kansas Parties also contend that SPP's filing does not violate the filed rate doctrine, rule against retroactive ratemaking, or rules for *ex ante* cost allocation.[44] Kansas Parties state that the increased wind generation in the Sunflower Zone is the result of the abundance of wind in this geographic area; it is not based on any demonstration of need or benefit to the load in the Sunflower Zone.  Kansas Parties argue that the

_____

[40] Supporting commenters include Basin Electric, ITC, Kansas Parties, and Western Kansas Industrial.

[41] Kansas Parties Comments at 6; Basin Electric Comments at 3-4; ITC Comments at 2-3; Western Kansas Industrial Comments at 2-3.

[42] Basin Electric Comments at 5; ITC Comments at 3; Kansas Parties Comments at 6; Western Kansas Industrial Comments at 4.

[43] Basin Electric Comments at 4; ITC Comments at 3; Kansas Parties Comments at 12-13.

[44] Kansas Parties Comments at 13.

Commission has previously recognized the existence of cost allocation inequity as it pertains to wind energy resources by approving an exception to the Highway/Byway method for designated wind resources.[45]

## 2.   Protests

27.    Indicated Transmission Owners and Municipal Utilities state that although SPP seeks to change the cost allocation of only certain Byway facilities in the Sunflower Zone, this change could result in substantial cost shifts among SPP zones.[46]  Municipal Utilities contend that if approved, SPP's proposed Tariff revisions would provide one SPP transmission owner with a $10 million annual windfall, while requiring other load in SPP to pay costs, the incurrence of which they did not (and do not) cause.[47]  Indicated Transmission Owners argue that SPP's filing does not contain any supporting testimony or other analysis that provides a basis to determine that the proposed Tariff changes are just and reasonable.[48]  Indicated Transmission Owners and Municipal Utilities argue that the acceptance of SPP's proposal would contravene the FPA's just and reasonable standard by violating the cost causation principle and the requirement for stable, predictable, and *ex ante* cost allocation methods.[49]

28.    According to Indicated Transmission Owners and Municipal Utilities, the Sunflower Byway Facilities were identified in response to Sunflower load forecasts anticipating local reliability needs that failed to manifest and that SPP seeks to allocate the remaining ATRR for those facilities on the pretext of correcting a misalignment of benefits and costs.[50]  Specifically, Indicated Transmission Owners and Municipal Utilities point to the 2014 High Priority Incremental Load Study that helped drive the construction of certain Sunflower Byway Facilities, which they state was designed

---

[45] Kansas Parties state that, "This exception was initially implemented in 2009 for the megawatt-mile cost allocation, *Sw. Power Pool, Inc.*, 127 FERC ¶ 61,283 (2009), and again for Highway/Byway cost allocation in 2010.  *See* Highway/Byway Order, 131 FERC ¶ 61,252 at P 78."  Kansas Parties Comments at n. 29.

[46] Indicated Transmission Owners Protest at 2.

[47] Municipal Utilities Protest at 9, 22.

[48] Indicated Transmission Owners Protest at 4, 16-17; Municipal Utilities Protest at 11-13.

[49] Indicated Transmission Owners Protest at 24; Municipal Utilities Protest at 9.

[50] Indicated Transmission Owners Protest at 2-3, 17-18; Municipal Utilities Protest at 2, 5, 10-11.

primarily to identify upgrades needed to accommodate fast developing new oil and gas loads that did not materialize.[51]  Indicated Transmission Owners note that, although SPP contends that the cost-benefit imbalance is due to higher-than-average levels of wind generation flowing on the facilities and out of the Sunflower Zone as compared to flows that serve loads in the Sunflower Zone, SPP has failed to demonstrate that an alleged misalignment of benefits and costs justifies the proposed Tariff revision.[52]

29.     Indicated Transmission Owners contend that any benefits that zones other than the Sunflower Zone receive from the Sunflower Byway Facilities are already reflected in the 33% regional allocation under the Highway/Byway method.[53]  Indicated Transmission Owners note that SPP has not shown which individual zones outside the Sunflower Zone are receiving a greater level of benefit from the Sunflower Byway Facilities.[54]

30.     Municipal Utilities contend that SPP's criteria for cost reallocation are unsound because they are not cost causative, and therefore the Commission should not allow the flawed criteria to serve as a post hoc justification for jettisoning a supported and long settled cost allocation method.  Municipal Utilities further argue that SPP has not met its burden of showing that application of the criteria would produce just and reasonable results.[55]

31.     Municipal Utilities argue that Sunflower's application shows that the majority of what SPP refers to as unaffiliated wind resources located in the Sunflower system are interconnected at 345 kV and only incidentally produce flows over the Sunflower Byway Facilities.[56]  Municipal Utilities contend that this in turn casts substantial doubt on SPP's proposition that the Sunflower Byway Facilities are primarily used to export energy from wind generation to other pricing zones.[57]

32.     Indicated Transmission Owners and Municipal Utilities also contend that SPP has failed to meet its burden under FPA section 205 because SPP's own RCAR analysis

---

[51] Indicated Transmission Owners at 13; Municipal Utilities Protest at 12-13.

[52] Indicated Transmission Owners Protest at 3.

[53] *Id.*

[54] *Id.* at 3-4, 16, 21.

[55] Municipal Utilities Protest at 15-17.

[56] *Id.* at 13.

[57] *Id.* at 14-15.

demonstrates that the Highway/Byway regional cost allocation method continues to deliver benefits at least roughly commensurate with costs and that Sunflower continues to enjoy a substantially greater level of benefits compared to its costs than numerous other SPP participants studied in the RCAR evaluation.[58]  Indicated Transmission Owners note that in the last two RCARs, the Sunflower Zone had a benefit-to-cost ratio of 3.70 or above, which is significantly above the 0.8 threshold and indicates that there is no misalignment of benefits and costs.[59]

33.    Indicated Transmission Owners contend that instead of addressing any imbalances in cost allocation through existing Tariff mechanisms such as the RCAR review process, SPP's approach has been to repeatedly attempt to change its Tariff to allow for ad hoc changes to the cost allocation of certain transmission facilities outside the RCAR process. Indicated Transmission Owners state that they are unaware of any attempt by Sunflower to request review or seek a remedy under those Tariff mechanisms.[60]

34.    Louisiana Commission contends that SPP's proposal asks the Commission to reallocate the byway costs on an ad hoc basis, without a written methodology or established policy in place.[61]  Louisiana Commission argues that SPP's proposal will lead to inconsistency and a lack of transparency in SPP cost allocations and would necessarily lead to an arbitrary Commission decision.  Louisiana Commission asserts that this would violate the Order No. 1000 requirement that costs must be allocated roughly commensurate with benefits and that those entities that receive no benefit must not be involuntarily allocated costs.[62]  Louisiana Commission further contends that SPP's proposal seeks to apply to cost allocation criteria from SPP's prior filing, and as such is a collateral attack on the Commission order rejecting its prior filing.  Louisiana Commission argues that SPP should not be allowed to relitigate the same issue again in this proceeding and that the Commission does not have jurisdiction to effectively modify its order rejecting SPP's prior filing that is now on appeal and when jurisdiction has

---

[58] Indicated Transmission Owners Protest at 4, 13, 19; Municipal Utilities Protest at 18-19.

[59] Indicated Transmission Owners Protest at 13; Municipal Utilities Protest at 19.

[60] Indicated Transmission Owners Protest at 21.

[61] Louisiana Commission Protest at 5.

[62] *Id.*

vested with the U.S. Court of Appeals for the District of Columbia Circuit (D.C. Circuit).[63]

35.     Louisiana Commission states that four of the 12 members of SPP's Regional State Committee (Louisiana, Arkansas, Oklahoma, and New Mexico) voted against the proposal.[64]  Louisiana Commission additionally states that other stakeholder groups also had substantial opposition to the proposal, noting that only 67% of the Regional Tariff Working Group stakeholders supported the reallocations and 51% of the Markets and Operations Policy Committee stakeholders voted in favor, falling short of the 66% required approval threshold.[65]

36.     Louisiana Commission argues that SPP's proposal violates the prohibition on retroactive ratemaking and that reallocating the revenue requirement on a prospective basis does not cure the retroactivity problem.[66]  Louisiana Commission states that the Sunflower Byway Facilities were planned and approved according to the SPP Tariff, the Highway/Byway method in place allocated 67% of the costs of the projects to the Sunflower Zone, and SPP seeks to change the cost allocation for the projects without having a "true rate reform" in place.  Additionally, Louisiana Commission asserts that the Byway allocation for the Sunflower Byway Facilities has been tested in SPP's RCAR process and satisfied the RCAR cost-benefit criteria, and that reallocating costs previously approved and shown to be beneficial for the Sunflower Zone would supplant the RCAR review process.[67]

37.     Additionally, Louisiana Commission argues that, if the Commission does not reject the proposal, it should set it for an evidentiary hearing to determine whether there is adequate justification for cost allocation changes for the Sunflower Byway Facilities.[68]

###     B.     Answers

38.     In its answer, SPP contends that, contrary to protesters' arguments that the need for the Sunflower Byway Facilities was caused either by zonal reliability needs or

---

[63] *Id.* at 6.

[64] *Id.* at 7.

[65] *Id.* at 8.

[66] *Id.* at 9.

[67] *Id.* at 10.

[68] *Id*. at 10-11.

anticipated zonal load growth, the original need for the Sunflower Byway Facilities is not germane to this proceeding.  SPP argues that its filing demonstrates that, even though the Sunflower Byway Facilities were initially anticipated to be used primarily by the local Sunflower Zone, they are now being used primarily on a region-wide basis, and, thus, their costs should be allocated accordingly.  SPP argues that the original need for the facilities is not relevant to whether the costs of facilities that confer regional benefits are being allocated in a manner that reflects cost causation principles.[69]  Similarly, Sunflower/KEPCO argue that the SPP High Priority Incremental Load Study cited by protesters was, contrary to their characterization, not limited to only local or zonal needs and instead focused on regional needs and was part of regional transmission planning.[70]

39.    SPP asserts that protesters' criticisms of the criteria used in SPP's analyses are misplaced and that those analyses demonstrate that the Sunflower Zone is receiving a cost share of the Sunflower Byway Facilities that far exceeds the bounds of the Commission's cost-causation principles.[71]  SPP also states that there is no retroactive ratemaking concern with its filing because it does not propose to reallocate transmission rates to revise customer charges for past periods' costs that have already been allocated and recovered from ratepayers.[72]

40.    SPP and Sunflower/KEPCo disagree with protesters' contentions that the RCAR process is the appropriate remedy for the misallocation of costs related to the Sunflower Byway Facilities.[73]  SPP argues that the RCAR is an informational tool to aid stakeholder review of SPP's Highway/Byway cost allocation method on a long-term basis, but it is not structured to demonstrate whether the Sunflower Byway Facilities currently are being utilized to benefit the entire SPP region.  SPP asserts that the RCAR process may identify certain zones that have a higher or lower benefit-to-cost ratio based on the forty-year review of the results of the Highway/Byway cost allocation method, but such results are not specific enough to address the problem that SPP is attempting to remedy through its filing in this proceeding.[74]  Similarly, Sunflower/KEPCo contend that the Commission should reject challenges to SPP's filing on the basis of the RCAR because the RCAR is inapplicable to the circumstances of this filing.  They assert that the RCAR is a

---

[69] SPP Answer at 5-6.

[70] Sunflower/KEPCo April 25 Answer at 4-5.

[71] SPP Answer at 6-9.

[72] *Id.* at 13.

[73] *Id.* at 10; Sunflower/KEPCo April 25 Answer at 4, 10.

[74] SPP Answer at 10-13.

Document Accession #: 20240531-3055          Filed Date: 05/31/2024

theoretical review for policy purposes, not for ratemaking, and that it cannot serve as the basis for a determination that a rate is unjust and unreasonable.[75]

41.    In their answer, Municipal Utilities argue that SPP and Sunflower/KEPCo seek to diminish the significance of the RCAR results by pointing to statements that it cannot form the basis of an unjust and unreasonable determination, but Municipal Utilities contend that this does not change the fact that the RCAR is informative and is intended to be the test of whether benefits received by transmission customers are roughly commensurate with costs assigned to those customers.[76]  Municipal Utilities also state that SPP's answer acknowledges that Highway/Byway cost allocation is successful, which undermines SPP's request that there should now be a select carve-out for a handful of facilities owned by a single SPP member.[77]

42.    SPP and Sunflower/KEPCo assert that this proposal does not collaterally attack a Commission order or relitigate an issue that has already been decided because this is a new and distinct proposal that does not challenge the Commission's prior orders, and, unlike previous proposals by SPP on this issue, this filing does not create any waiver process and does not provide the SPP Board with discretion to approve any change in cost allocation.[78]  Sunflower/KEPCo also assert that protesters are incorrect in suggesting that the SPP filing should be rejected because some stakeholders voted against the proposal.  Sunflower/KEPCo argue that the Commission has recognized that all parties may not agree on all aspects of a proposal.  Sunflower/KEPCo also note that no party has taken issue with the stakeholder process itself.[79]

43.    Sunflower/KEPCo assert that SPP's proposal does not defy or challenge the foundation of the Highway/Byway method, but rather reflects a stakeholder consensus to provide a remedy under limited circumstances.[80]  According to Sunflower/KEPCo, the Commission in the Highway/Byway Order refused to require specific analyses or tests to justify the reasonableness of a proposed cost allocation, and thus Sunflower/KEPCo argue that there is no bar to using the three criteria used by SPP to support the proposed

---

[75] Sunflower/KEPCo April 25 Answer at 10-13.

[76] Municipal Utilities Answer at 9-10.

[77] *Id.* at 8-9 (citing SPP Answer at 15).

[78] SPP Answer at 14; Sunflower/KEPCo April 25 Answer at 3, 7-8.

[79] Sunflower/KEPCo April 25 Answer at 13-14.

[80] Sunflower/KEPCo May 23 Answer at 4-5.

cost allocation for the Sunflower Byway Facilities.[81]  Sunflower/KEPCo also contend that the Commission's *ex ante* pricing policy does not preclude reviews to a cost allocation to ensure that it remains just and reasonable.  Further, Sunflower/KEPCo state that the Highway/Byway Order specifically discussed that in instances where the Highway/Byway method becomes inequitable or results in a cost allocation where benefits are not at least roughly commensurate with costs, SPP would propose changes to address those concerns.[82]

## IV.  Discussion

### A.  Procedural Matters

44.     Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214 (2023), the notices of intervention and timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding.

45.     Pursuant to Rule 214(d) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214(d), we grant ITC's late-filed motion to intervene given its interest in the proceeding, the early stage of the proceeding, and the absence of undue prejudice or delay.

46.     Rule 213(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.213(a)(2) (2023), prohibits an answer to a protest or answer unless otherwise ordered by the decisional authority.  We accept the SPP, Sunflower/KEPCo, and Municipal Utilities answers because they have provided information that assisted us in our decision-making process.

### B.  Substantive Matters

47.     We accept SPP's proposed Tariff revisions, effective June 1, 2024, as requested, for the reasons discussed below.

48.     We find that SPP's proposal to prospectively allocate the Sunflower Byway Facilities' remaining ATRRs on a 100% regional, postage-stamp basis is just and reasonable and not unduly discriminatory or preferential because SPP has demonstrated that, under its proposal, the costs of these transmission facilities will be allocated in a

---

[81] *Id.* at 7 (citing Highway/Byway Order, 131 FERC ¶ 61,252 at P 74).

[82] *Id.* (citing Highway/Byway Order, 131 FERC ¶ 61,252 at P 83).

manner that is at least roughly commensurate with estimated benefits, consistent with the cost causation principle.[83]

49.     Specifically, we find that SPP's capacity, flow, and benefit analyses of the Sunflower Byway Facilities show that these transmission facilities provide benefits to the SPP region as a whole.  In its capacity analyses, SPP evaluated whether generation capacity in the Sunflower Zone exceeded load in the zone.  The capacity analyses demonstrate that, in the Sunflower Zone, generation that is unaffiliated with load in the zone is more than triple the average 12-CP Load in the Sunflower Zone.[84]  Thus, SPP's capacity analyses show that the amount of generation capacity in the Sunflower Zone greatly exceeds the load in the Sunflower Zone.  Relatedly, in its flow analyses, SPP evaluated whether power flows on the Sunflower Byway Facilities resulted from generation not affiliated with load in the zone.  The flow analyses demonstrate that more than 70% of the power flows over the Sunflower Byway Facilities are from generation unaffiliated with the Sunflower Zone's load.[85]  As a result, SPP's flow analyses demonstrate that a significant majority of the power flows on the Sunflower Byway Facilities result from generation not affiliated with load in the zone.

50.     Considered together, we find that SPP's capacity and flow analyses demonstrate that electricity generated from resources inside the Sunflower Zone is being used by load outside of the Sunflower Zone and that the Sunflower Byway Facilities are being used to deliver this electricity.  Moreover, SPP's benefit analyses demonstrate that the Sunflower Byway Facilities provide average adjusted production cost savings to the SPP region as a whole,[86] and as such the entire SPP region benefits economically from the Sunflower Byway Facilities.  Because the Sunflower Byway Facilities provide benefits to the entire SPP region, we find that the proposed 100% regional, postage stamp cost allocation will

---

[83] The cost causation principle requires costs to be allocated to those who cause the costs to be incurred and reap the resulting benefits.  *See S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d at 87 (citing *Nat'l Ass'n of Regul. Util. Comm'nrs v. FERC*, 475 F.3d 1277, 1285 (D.C. Cir. 2007)); *see also* Order No. 1000, 136 FERC ¶ 61,051 at P 623 (requiring, in Order No. 1000 regional transmission planning and cost allocation processes, a "beneficiaries pay" cost allocation method, which the Commission stated "is fully consistent with the cost causation principle as recognized by the Commission and the courts").

[84] SPP Transmittal at 19, 23, 29.

[85] *Id.* at 20, 24, 30-31.

[86] *Id.* at 21-22, 26, 32.

allocate the remaining costs of the transmission facilities in a manner that is at least roughly commensurate with benefits received and, therefore, is just and reasonable.

51.     We find unconvincing protesters' arguments that the proposed cost allocation for the remaining costs of the Sunflower Byway Facilities is inappropriate because those facilities were constructed to address zonal reliability issues or forecasted load growth that was never realized, rather than regional needs.  We find that SPP's proposal will prospectively allocate the Sunflower Byway Facilities' remaining costs in a manner that is at least roughly commensurate with estimated benefits.  The record demonstrates that, regardless of the original reason for the construction of these facilities, currently and prospectively the SPP region will receive substantial benefits from the Sunflower Byway Facilities, and therefore it is just and reasonable for the entire SPP region to bear 100% of the remaining costs of those transmission facilities.  We also note that load in the Sunflower Zone will continue to pay a portion of the cost of the Sunflower Byway Facilities through its share of the 100% regional cost allocation for those facilities.

52.     In response to protesters' assertions that the Commission already found that SPP failed to demonstrate that its proposals to allow for deviations from the Highway/Byway method will result in rates that are just and reasonable and not unduly discriminatory or preferential, we note that those prior findings were predicated upon vesting too much discretion with the SPP Board,[87] which is not a factor here.  Moreover, this proposal is limited to a specific cost allocation for specific transmission facilities (i.e., 100% regional, postage stamp cost allocation for the remaining costs of the Sunflower Byway Facilities).  For similar reasons, we disagree with Louisiana Commission's claim that the Commission does not have jurisdiction over this matter because SPP's prior 2022 Proposal is now on appeal and jurisdiction has vested with the D.C. Circuit.  SPP's proposal here is separate and distinct from SPP's prior proposals, and there are no jurisdictional concerns with the Commission acting on new proposals made pursuant to FPA section 205.

---

[87] First Rejection Order, 175 FERC ¶ 61,198 at P 39 ("We find that SPP's proposal grants the SPP Board too much discretion in allocating the costs of Byway facilities without clear standards for how its cost allocation decisions will be made."); July 2023 Rehearing Order, 184 FERC ¶ 61,028 at P 50 ("SPP's proposal . . . continues to grant the SPP Board too much discretion in allocating the costs of Byway facilities, and does not fully address the concerns with the discretion afforded to the SPP Board under its prior proposal . . . ."); December 2023 Rehearing Order, 185 FERC ¶ 61,189 at P 29 ("We find that that there is potential for unduly discriminatory or preferential outcomes among otherwise similarly situated Byway facilities given the SPP's Board's discretion.").

53.      In response to Indicated Transmission Owners' arguments that SPP's analysis is insufficiently granular (i.e., it does not provide information about benefits to individual transmission pricing zones) to determine whether the entire SPP region would receive benefits at least roughly commensurate with costs, we emphasize that cost allocation precedent does not require such "exacting precision" in the Commission's cost allocation decisions,[88] only that the costs of transmission facilities be allocated in a manner that is at least roughly commensurate to those that benefit. We find that a granular zone-by-zone benefits analysis is not necessary to find that SPP's proposal to allocate the remaining costs of the Sunflower Byway Facilities on a 100% regional, postage-stamp basis is just and reasonable. We find that the analyses that SPP submitted to support its proposal demonstrate that the Sunflower Byway Facilities provide benefits to the SPP region as a whole, and there is sufficient evidence to support the proposed 100% regional, postage stamp cost allocation for the remaining costs of the Sunflower Byway Facilities.

54.      Furthermore, in response to Municipal Utilities' arguments regarding unaffiliated generation resources being interconnected at 345 kV and only incidentally producing flows over the Sunflower Byway Facilities, we note that the Commission has previously accepted the use of a power flow transfer distribution factor analysis to demonstrate that costs will be allocated in a manner that is at least roughly commensurate with benefits.[89] SPP similarly uses a power flow transfer distribution factor analysis in its flow analyses to demonstrate use of the Sunflower Byway Facilities to serve load outside of the Sunflower Zone and that the proposed cost allocation is just and reasonable.

55.      In response to protesters' assertions that the most recent RCAR shows that there is no misalignment of costs and benefits in the Sunflower Zone, we note that the RCAR does not have to show an imbalanced cost allocation for SPP to propose, under FPA section 205, a change to the prospective allocation of the costs of specific transmission facilities. We also disagree with protesters' arguments that SPP's proposal undermines SPP's Order No. 1000 *ex ante* cost allocation requirement, as nothing in this filing alters the Highway/Byway method that applies to transmission facilities selected in a regional transmission plan for purposes of cost allocation. Notwithstanding the requirement of

---

[88] *See Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361, 1369 (D.C. Cir. 2004) ("[W]e have never required a ratemaking agency to allocate costs with exacting precision. It is enough . . . that the cost allocation mechanism not be 'arbitrary or capricious' in light of the burdens imposed or benefits received." (citation omitted)).

[89] *See PJM Interconnection, L.L.C.*, 142 FERC ¶ 61,214 (2013) (accepting PJM's cost allocation methods allocating either 50% or 100% of the costs of certain transmission facilities based on the solution-based distribution factor (or DFAX) method). *See also Midwest Indep. Transmission Sys. Operator, Inc.,* 114 FERC ¶ 61,106, at P 44 (2006).

Order No. 1000 for transmission providers to have an *ex ante* cost allocation method for selected regional transmission facilities, Order No. 1000 does not prohibit the use of other cost allocation methods.[90]  The different allocation of the remaining costs of the Sunflower Byway Facilities on a prospective basis is supported by the specific facts and analyses presented in the instant proceeding, which demonstrate that allocating these remaining costs on a 100% regional, postage stamp basis will result in an allocation of costs that is at least roughly commensurate with benefits.

56.     In response to Louisiana Commission's claim that SPP's proposal would reallocate costs without a written methodology or established policy and will thus introduce inconsistency and a lack of transparency to SPP cost allocations, leading to an arbitrary Commission decision, we note that our acceptance here adheres to the cost causation principle, which stipulates that costs must be allocated in a manner that is at least roughly commensurate with benefits.  Our decision here is not arbitrary but rather based on evidence in the record, provided by SPP, that demonstrates that the Sunflower Byway Facilities provide benefits to the entire SPP region to support a 100% regional, postage stamp cost allocation for their remaining costs.

57.     In response to Louisiana Commission's argument that SPP's proposal constitutes a retroactive change to SPP's Tariff and therefore violates the Commission's prohibition on retroactive ratemaking, we find that SPP's proposal does not violate the rule against retroactive ratemaking because, as SPP explains, any changes in rates relating to the reallocation of costs for the Sunflower Byway Facilities will apply to future revenue requirements only.[91]  We decline Louisiana Commission's request to subject SPP's filing to a hearing process because the record does not need further factual development.[92]  We

---

[90] *Cf.*, *e.g.*, *Midcontinent Indep. Sys. Operator, Inc.*, 179 FERC ¶ 61,124, at PP 1, 71 (2022) (accepting prospective changes to existing cost allocation method for Multi-Value Projects); *PJM Interconnection, L.L.C.*, 161 FERC ¶ 61,005, at PP 58-59 (2017) (addressing cost allocation for Targeted Market Efficiency Projects (TMEP) and noting that "Order No. 1000's . . . cost allocation requirements do not apply to TMEPs."); *Allocation of Capacity on New Merchant Transmission Projects and New Cost-Based, Participant-Funded Transmission Projects*, 140 FERC ¶ 61,061, at P 10 (2012) ("bilateral negotiation . . . may be another appropriate vehicle for . . . participant-funded transmission projects to move forward. In fact, Order No. 1000 allowed for such a vehicle, noting that some projects may not seek to pursue regional or interregional cost allocation.").

[91] SPP Transmittal at 35-36.

[92] *See, e.g.*, *ANR Pipeline Co. v. FERC*, 870 F.2d 717, 723 (D.C. Cir. 1989) ("The established law in this circuit is that FERC need not hold an evidentiary hearing where no issue of material fact is to be resolved."); *So. Cal. Edison Co.*, 109 FERC ¶ 61,086, at P

Document Accession #: 20240531-3055    Filed Date: 05/31/2024

find that SPP's proposal, including its supporting evidence therein, is sufficient to evaluate whether the proposed allocation of the remaining costs of the Sunflower Byway Facilities is just and reasonable and consistent with cost causation.

The Commission orders:

SPP's proposed Tariff revisions are hereby accepted, effective June 1, 2024, as discussed in the body of this order.

By the Commission.  Commissioner Christie is concurring in the result with a separate statement attached.

( S E A L )

Debbie-Anne A. Reese,
Acting Secretary.

---

38 (2004) ("The Commission may properly deny an evidentiary hearing if the issues, even disputed issues, may be adequately resolved on the written record.").

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Southwest Power Pool, Inc.                              Docket No.  ER24-1583-000

(Issued May 31, 2024)

CHRISTIE, Commissioner, *concurring in the result*:

1.      I concur in the result of today's order accepting SPP's filing only because the SPP Regional State Committee (RSC) apparently voted to support the proposal.[1]  I say "apparently" because there is no filing in the record from the RSC itself or any officer of the RSC speaking on behalf of the RSC and explaining the RSC's position on this quite extraordinary departure from SPP's long-standing "Highway/Byway" *ex ante* cost allocation formula.  While I defer to the representations made by SPP as to the RSC position, I write separately to address my substantive concerns with SPP's filing.

2.      First, SPP's proposal is a radical departure from SPP's Highway/Byway method, SPP's Order No. 1000-compliant *ex ante* cost allocation method, which has long been held up as an example of a workable *ex ante* cost allocation that all the states in a multi-state region support.  I agree with protesters that this proposal undermines the stability and predictability that the Highway/Byway *ex ante* formula—with state support—has long represented.

3.      Under SPP's current tariff—*i.e.*, under SPP's Highway/Byway method—67% of the costs of the Sunflower Byway Facilities at issue are allocated to the Sunflower Zone and 33% of the costs are regionally allocated to all SPP pricing zones on a postage stamp basis.  SPP's proposal to allocate 100% of the costs of the Sunflower Byway Facilities regionally on a postage stamp basis serves as an *ex post* exception to the Highway/Byway method.  Accordingly, the statement in today's order that "nothing in [SPP's] filing alters the Highway/Byway method that applies to transmission facilities selected in a regional

---

[1] *See* SPP Filing at 3, 27 (both citing Oct. 30, 2023 RSC Meeting Minutes, Agenda Item 5, https://www.spp.org/documents/70490/draft%20rsc%20minutes%20october%202023.pdf .)  Four states voted against the proposal:  Arkansas, Louisiana, Oklahoma, and New Mexico.  The RSC also did not file comments in the prior SPP Highway/Byway cost allocation proceeding in Docket No. ER22-1846-001.  *E.g.*, *Sw. Power Pool, Inc.*, 181 FERC ¶ 61,076 (2022) (Christie, Comm'r, dissenting at P 3) (citation omitted), https://www.ferc.gov/news-events/news/commissioner-christies-dissent-spp-highwaybyway-cost-allocation-exception-docket.

transmission plan for purposes of cost allocation"[2] is wrong as a matter of fact. *Of course, it does.* That is the whole purpose of seeking this extraordinarily large exception to the Highway/Byway formula. What this exception demonstrates is that if one or more states in a multi-state planning region want an exception to an existing *ex ante* cost allocation formula, the fairest and best vehicle for achieving such an exception may be a voluntary agreement among the states which agree to bear the costs of such an exception, if that is what the states in the region want. But if an *ex ante* formula is the chosen method, should it only apply except when it doesn't? A voluntary state agreement approach may be a better alternative if the *ex ante* formula is honored except when it isn't.

4.      As with any exception, the concern is whether the exception will swallow the rule. SPP states that it "is not aware of any other Byway Facilities currently allocated under the SPP Tariff that would qualify for this proposed allocation of [annual transmission revenue requirement] on a region-wide basis as proposed in this docket,"[3] and that it "does not foresee another future filing similar to the proposal before the Commission in this docket."[4] However, as SPP's generation mix and power flows change, the use of other Byway facilities in SPP may also evolve. Indeed, the Sunflower Byway Facilities themselves were developed to meet anticipated local reliability needs, but now, according to SPP, these facilities are primarily used to export wind power. I am not confident in SPP's expectation that the instant filing is simply a one-off. Rather, I am concerned that the acceptance of its filing may open the floodgates for other SPP section 205 filings seeking to reallocate costs of SPP's Byway facilities. The filings may not end there. As a result of today's order, the states of the RSC, generators, transmission owners, consumers, and other interested parties may seek cost reallocations in section 206 complaint filings. After all, once an exception of this magnitude is made, others who would profit from such an exception will not be estopped from asking, "What about me?"

5.      The second major concern I have with SPP's filing is that, although SPP provides evidence that the Sunflower Byway Facilities benefit the SPP region as a whole, SPP does not provide information about the benefits to SPP's individual transmission pricing zones. Today's order argues that such granularity is not necessary: "[The Commission] emphasize[s] that cost allocation precedent does not require such 'exacting precision' in the Commission's cost allocation decisions, only that the costs of transmission facilities be allocated in a manner that is at least roughly commensurate to those that benefit."[5]

---

[2] Order at P 55.

[3] SPP Transmittal at 38.

[4] *Id.*

[5] Order at P 53 & n.88 (citing *Midwest ISO Transmission Owners v. FERC*, 373 F.3d 1361, 1369 (D.C. Cir. 2004) ("[W]e have never required a ratemaking agency to

Document Accession #: 20240531-3055     Filed Date: 05/31/2024

But other than for the Sunflower Zone, SPP has entirely failed to compare the benefits to the individual pricing zones to the costs that will be reallocated to those zones. Thus, in accepting SPP's proposal, the Commission has failed to confirm that the "roughly commensurate" cost causation principle is satisfied:

> We do not suggest that the Commission has to calculate benefits to the last penny, or for that matter to the last million or ten million or perhaps hundred million dollars. . . . [I]t can presume that new transmission lines benefit the entire network by reducing the likelihood or severity of outages. . . . But it cannot use the presumption to avoid the duty of "comparing the costs assessed against a party to the burdens imposed or benefits drawn by that party."[6]

6.      The lack of granularity undercuts SPP's proof. It could conceptually be the case that the Sunflower Byway Facilities provide some benefits to each of SPP's pricing zones. Based on the record of this proceeding, we just don't know. Essentially SPP is saying, "We *believe* there are commensurate benefits, just don't make us prove it by zone." And the order does not require such proof. From SPP's filing, I cannot discern whether the distribution of such benefits are "lumpy," nor to what extent. Some pricing zones—for example, those receiving the wind power that generators in the Sunflower Zone may be using the Sunflower Byway Facilities to export—might be receiving the vast majority of the benefits, while other pricing zones may be receiving virtually none at all. Absent any sort of comparison in the record, I cannot conclude that the costs each of the SPP pricing zones are being reallocated are "roughly commensurate" to the benefits they are receiving. Particularly since SPP seeks an *ex post* exception to the Highway/Byway method, providing this comparison should not be difficult.

For these reasons, I concur in the result.

_____
Mark C. Christie
Commissioner

_____

allocate costs with exacting precision. It is enough . . . that the cost allocation mechanism not be 'arbitrary or capricious' in light of the burdens imposed or benefits received.")) (cleaned up).

    [6] *Ill. Com. Comm'n v. FERC*, 576 F.3d 470, 477 (7th Cir. 2009) (quoting *Midwest ISO Transmission Owners v. FERC*, 373 F.3d at 1368) (internal citations omitted).

Document Accession #: 20240531-3055   Filed Date: 05/31/2024

Document Content(s)

ER24-1583-000.docx...................................................1

**Attachment B**

188 FERC ¶ 62,057
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Southwest Power Pool, Inc.                    Docket No. ER24-1583-001

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(August 1, 2024)

Rehearing has been timely requested of the Commission's order issued on
May 31, 2024, in this proceeding.  *Sw. Power Pool, Inc.*, 187 FERC ¶ 61,123 (2024).  In
the absence of Commission action on a request for rehearing within 30 days from the date
it is filed, the request for rehearing may be deemed to have been denied.  16 U.S.C.
§ 825*l*(a); 18 C.F.R. § 385.713 (2023); *Allegheny Def. Project v. FERC*, 964 F.3d 1
(D.C. Cir. 2020) (en banc).

As provided in 16 U.S.C. § 825*l*(a), the requests for rehearing of the above-cited
order filed in this proceeding will be addressed in a future order to be issued consistent
with the requirements of such section.  As also provided in 16 U.S.C. § 825*l*(a), the
Commission may modify or set aside its above-cited order, in whole or in part, in such
manner as it shall deem proper.

Debbie-Anne A. Reese,
Acting Secretary.

Document Content(s)

ER24-1583-001.docx.......................................................1

**Attachment C**

**CORPORATE DISCLOSURE STATEMENT OF AMERICAN ELECTRIC POWER SERVICE CORPORATION, SOUTHWESTERN ELECTRIC POWER COMPANY, AND PUBLIC SERVICE COMPANY OF OKLAHOMA**

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Petitioner American Electric Power Service Corporation ("AEPSC"), on behalf of Southwestern Electric Power Company ("SWEPCO") and Public Service Company of Oklahoma ("PSO"), provides the following Corporate Disclosure Statement.

AEPSC is a service company that provides management and professional services to American Electric Power Company, Inc. ("AEP") and its subsidiary electric utility operating companies. AEPSC is a wholly-owned subsidiary of AEP, a corporation whose common stock is publicly held and traded on Nasdaq Exchange. AEP has no parent company. Certain institutional investors including Vanguard may from time to time hold 10 percent or more of the outstanding shares of AEP, but to AEP's knowledge no publicly-held company has a 10 percent or greater ownership interest in AEP.

SWEPCO and PSO are public utilities engaged in the generation and/or transmission and/or distribution of electric power in their

respective states and service territories.  SWEPCO and PSO are wholly-owned, direct subsidiaries of AEP. As explained above, AEP is publicly traded.  No other publicly held company has a 10 percent or greater ownership interest in SWEPCO or PSO.

Dated: August 28, 2024

Respectfully submitted,

/s/ *Christopher R. Jones*

Carrie L. Bumgarner
Senior Counsel
AMERICAN ELECTRIC POWER SERVICE
CORPORATION
1 Riverside Plaza
Columbus, OH 43215
(614) 716-2941
clbumgarner@aep.com

Christopher R. Jones
S. Jennifer Panahi
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th St., NW, Suite 1000
Washington, DC 20004
(202) 662-2181
chris.jones@troutman.com
jennifer.panahi@troutman.com

C. Dixon Wallace III
TROUTMAN PEPPER
HAMILTON SANDERS LLP
1001 Haxall Point, Suite 1500
Richmond, VA 23219
(804) 697-2279
dixon.wallace@troutman.com

*Counsel for American Electric
Power Service Corporation, on
behalf of Southwestern Electric
Power Company and Public
Service Company of Oklahoma*

3

## CORPORATE DISCLOSURE STATEMENT OF XCEL ENERGY SERVICES INC. AND SOUTHWESTERN PUBLIC SERVICE COMPANY

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Petitioner Xcel Energy Services Inc. ("XES"), on behalf of Southwestern Public Service Company ("SPS") (collectively, "Xcel"), provides the following Corporate Disclosure Statement.

XES is the centralized service company that provides administrative and general services to the Xcel Energy Inc. ("Xcel Energy") holding company system, including SPS. XES is a wholly-owned subsidiary of Xcel Energy, a corporation whose common stock is publicly held and traded on Nasdaq Exchange. Xcel Energy has no parent company. The Vanguard Group currently owns 13% of Xcel Energy, but to Xcel's knowledge, no other entity owns a 10 percent or greater ownership interest in Xcel Energy.

SPS is a vertically integrated electric utility engaged in the generation, transmission, and distribution services in Texas and New Mexico, and owns transmission in portions of Kansas and Oklahoma. SPS is a wholly-owned subsidiary of Xcel Energy. As explained above,

Xcel Energy is publicly traded.  No other publicly held company has a 10 percent or greater ownership in Xcel.

Dated: August 28, 2024

Respectfully submitted,

/s/ *Christopher R. Jones*

Timothy T. Mastrogiacomo
Area Vice President, Legal
XCEL ENERGY SERVICES INC.
701 Pennsylvania Ave. NW
Ste. 250
Washington, DC 20006
(202) 661-4481
tim.t.mastrogiacomo@xcelenergy.com

Christopher R. Jones
S. Jennifer Panahi
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th St., NW, Suite 1000
Washington, DC 20004
(202) 662-2181
chris.jones@troutman.com
jennifer.panahi@troutman.com

C. Dixon Wallace III
TROUTMAN PEPPER
HAMILTON SANDERS LLP
1001 Haxall Point, Suite 1500
Richmond, VA 23219
(804) 697-2279
dixon.wallace@troutman.com

*Counsel for Xcel Energy Services Inc., on behalf of Southwestern Public Service Co.*

2

**Attachment D**

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on August 28, 2024, I filed the foregoing Petition for Review with the Clerk of the U.S. Court of Appeals for the District of Columbia Circuit using the CM/ECF System.

Pursuant to Federal Rules of Appellate Procedure 15(c) and 25(d), I certify that on August 28, 2024, a true and accurate copy of this Petition was served on the official service lists compiled by the Secretary in the agency proceeding below (ER24-1583-000; ER24-1583-001) and on the FERC solicitor. Service was accomplished by electronic mail or by first class mail if no consent to electronic mail service was provided.

I further certify that, upon receiving a file-stamped copy of this Petition, I will cause a paper copy of the stamped Petition to be served via first class mail on the following parties that participated in the agency sub-docket proceeding below (ER24-1583-000; ER24-1583-001):

Debbie-Anne A. Reese, Acting Secretary
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426

Robert Solomon, Solicitor
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426

I declare the above to be true and correct under penalty of perjury.

Dated: August 28, 2024

/s/ *Christopher R. Jones*
Christopher R. Jones
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th St., NW, Suite 1000
Washington, DC 20004
(202) 662-2181
chris.jones@troutman.com

*Counsel for American Electric Power Service Corporation, on behalf of Southwestern Electric Power Company and Public Service Company of Oklahoma, and Xcel Energy Services Inc., on behalf of Southwestern Public Service Co.*

**FERC** Online - Web Applications of the Federal Energy Regulatory Commission



| | FERC Online Home |
|---|---|
| | **About FERC Online** |
| | Log Out |
| | Edit Registration |
| | **Company Registration** |
| | eFiling |
| | eSubscription |
| | eComment |
| | Query Mailing List/Recipients by State |
| | Query Service List |
| | My Service List |
| | My Filing List |
| | **eLibrary** |
| | **eTariff Viewer** |
| | **Help** |

### Service List for ER24-1583-000 Southwest Power Pool, Inc.

Contacts marked ** must be postal served

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| American Electric Power Service Corporation | Carrie Bumgarner<br>Senior Counsel<br>American Electric Power Company<br>1 RIVERSIDE PLZ<br>COLUMBUS, OHIO 43215<br>UNITED STATES<br>clbumgarner@aep.com | Jessica Cano<br>Senior Counsel<br>AEP Service Corporation<br>1 Riverside Plaza<br>COLUMBUS, OHIO 43215<br>jacano@aep.com |
| American Electric Power Service Corporation | | Jim Jacoby<br>self employed<br>2127 RIVERS EDGE DR NE<br>RIO RANCHO, NEW MEXICO 87144<br>jwjacoby77@gmail.com |
| American Electric Power Service Corporation | | Brian Johnson<br>American Electric Power Service Corpo<br>212 E 6th St<br>Tulsa, OKLAHOMA 74119<br>bajohnson1@aep.com |
| American Electric Power Service Corporation | | Richard Ross<br>Direct RTO Policy West<br>American Electric Power Service Corpo<br>212 E 6th St<br>Tulsa, OKLAHOMA 74119<br>rross@aep.com |
| American Electric Power Service Corporation | | LaChon Turner<br>AEP COMPANIES<br>801 PENNSYLVANIA AVE NW STE 735<br>WASHINGTON, DISTRICT OF COLUMBI<br>lturner@aep.com |
| Basin Electric Power Cooperative | Jesse Halpern<br>Thompson Coburn LLP<br>1909 K St NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>jhalpern@thompsoncoburn.com | Nicole S Allen<br>Attorney<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA<br>nallen@thompsoncoburn.com |
| Basin Electric Power Cooperative | | Griffin C. Rice<br>Attorney<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>WASHINGTON, DISTRICT OF COLUMBI<br>grice@thompsoncoburn.com |
| Basin Electric Power Cooperative | | Matthew R Kolling<br>Senior Staff Counsel<br>Basin Electric Power Cooperative<br>1717 E INTERSTATE AVE<br>BISMARCK, NORTH DAKOTA 58503<br>mkolling@bepc.com |
| Basin Electric Power Cooperative | | Mike Kraft<br>Basin Electric Power Cooperative<br>1717 E Interstate Ave<br>Bismarck, NORTH DAKOTA 58503<br>mkraft@bepc.com |
| Basin Electric Power Cooperative | | Jeremy Voll<br>Electrical Engineer III<br>Basin Electric Power Cooperative<br>1717 E INTERSTATE AVE<br>BISMARCK, NORTH DAKOTA 58503<br>jvoll@bepc.com |
| Basin Electric Power Cooperative | | Nasser AlKhamis<br>Electrical engineer<br>Basin Electric Power Cooperative |

| | | |
|---|---|---|
| | | 3RD E INTERSTATE AVE<br>BISMARCK, NORTH DAKOTA 58503<br>nalkhamis@bepc.com |
| City Utilities of Springfield, Missouri | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |
| Evergy Kansas Central, Inc.; Evergy Metro, Inc.; and Evergy Missouri West, Inc. | Patrick Smith<br>Corporate Counsel<br>Evergy, Inc.<br>818 S KANSAS AVE<br>TOPEKA, KANSAS 66612<br>UNITED STATES<br>Patrick.Smith@evergy.com | Denise M Buffington<br>Sr Dir Federal Regulatory Affa<br>Kansas City Power & Light Company<br>PO Box 418679<br>Kansas City,KANSAS 64141-9879<br>Denise.Buffington@evergy.com |
| Evergy Kansas Central, Inc.; Evergy Metro, Inc.; and Evergy Missouri West, Inc. | | James Flucke<br>Manager, Federal Regulatory Af<br>1200 Main<br>Kansas City, MISSOURI 64105<br>jim.flucke@evergy.com |
| ITC Great Plains, LLC | James Bixby<br>Counsel - Regulatory & Legisla<br>ITC Holdings Corp.<br>601 13th St NW<br>Suite 710S<br>RTS-RETURN TO SENDER<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>jbixby@itctransco.com | |
| Kansas City Board of Public Utilities | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |
| Kansas Corporation Commission | Carly Masenthin<br>Litigation Counsel<br>Kansas Corporation Commission<br>1500 SW ARROWHEAD RD<br>TOPEKA, KANSAS 66604<br>UNITED STATES<br>c.masenthin@kcc.ks.gov | |
| Kansas Electric Power Cooperative, Inc. | Kimberly Frank<br>Counsel<br>K&L Gates LLP<br>1601 K Street NW<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>kimberly.frank@klgates.com | Susan B Cunningham<br>SVP & General Counsel<br>Kansas Electric Power Cooperative, Inc<br>600 SW Corporate View<br>Topeka, KANSAS 66615<br>Jackson<br>scunningham@kepco.org |
| Louisiana Public Service Commission | Dana Shelton<br>Attorney<br>STONE, PIGMAN, WALTHER, ET AL.<br>909 Poydras Street,Suite 3150<br>New Orleans, LOUISIANA 70112-4042<br>UNITED STATES<br>dshelton@stonepigman.com | Robert L Sisung<br>LANE@SISUNG.COM |
| Louisiana Public Service Commission | Justin Swaim<br>Attorney<br>Stone Pigman Walther Wittmann L.L.C.<br>909 POYDRAS ST STE 3150<br>NEW ORLEANS, LOUISIANA 70112<br>UNITED STATES<br>jswaim@stonepigman.com | Jake Chapman<br>United Professionals Company<br>The Sisung Group<br>201 SAINT CHARLES AVE STE 4240<br>NEW ORLEANS, LOUISIANA 70170<br>jake@sisung.com |
| Louisiana Public Service Commission | Daria Diaz<br>Attorney<br>909 Poydras St., Ste. 3150<br>New Orleans, LOUISIANA 70112<br>UNITED STATES<br>ddiaz@stonepigman.com | Julie Viviano<br>United Professionals Co., LLC<br>201 St. Charles Avenue, Suite 4240<br>New Orleans, LOUISIANA 70170<br>julie@sisung.com |
| Louisiana Public Service | Kathryn Bowman<br>Executive Counsel | |

| Commission | Louisiana Public Service Commission | |
|---|---|---|
| | 602 N 5TH ST<br>BATON ROUGE, LOUISIANA 70802<br>UNITED STATES<br>kathryn.bowman@la.gov | |
| Midwest Energy, Inc | Aaron Rome<br>Manager Transmission Operation<br>Midwest Energy, Inc.<br>1330 Canterbury<br>Hays, KANSAS 67601<br>UNITED STATES<br>arome@mwenergy.com | William Dowling<br>V.P. Energy Mgmt<br>Midwest Energy, Inc.<br>1330 CANTERBURY DR<br>HAYS, KANSAS 67601<br>bdowling@mwenergy.com |
| Midwest Energy, Inc | Nicole Travers<br>Associate<br>LOEB & LOEB<br>900 New York Avenue NW<br>Suite 300 E<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>ntravers@loeb.com | Richard M Lorenzo<br>LOEB & LOEB<br>901 New York Ave., NW<br>Suite 300 East<br>Washington, DISTRICT OF COLUMBIA<br>rlorenzo@loeb.com |
| Missouri Joint Municipal Electric Utility Commission d/b/a the Missouri Electric Commission | Heather Starnes<br>Attorney<br>Healy Law Offices, LLC<br>3010 S. Battlefield<br>Suite A<br>Springfield, MISSOURI 65804<br>UNITED STATES<br>heather@healylawoffices.com | |
| Missouri Joint Municipal Electric Utility Commission d/b/a the Missouri Electric Commission | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |
| Oklahoma Gas and Electric Company | William Sultemeier<br>General Counsel and Chief Comp<br>OGE Energy Corp.<br>321 N Harvey Avenue<br>Oklahoma City, OKLAHOMA 73102<br>UNITED STATES<br>sultemwh@oge.com | DeAnn M Aderholt<br>Oklahoma Gas and Electric Company<br>321 N. Harvey<br>P.O. Box 321 M/C 1208<br>Oklahoma City, OKLAHOMA 73101<br>aderhodm@oge.com |
| Oklahoma Gas and Electric Company | | Dominic D Williams<br>Senior Attorney, Manager Legal<br>Oklahoma Gas and Electric Company<br>321 N HARVEY AVE<br>OKLAHOMA CITY, OKLAHOMA 73102<br>williado@oge.com |
| Oklahoma Gas and Electric Company | | Emily C. Shuart<br>shuartec@oge.com |
| Omaha Public Power District | Collin Sniff<br>Energy Regulatory Policy Manag<br>Omaha Public Power District<br>444 S 16TH STREET MALL<br>OMAHA, NEBRASKA 68102<br>UNITED STATES<br>cjsniff@oppd.com | |
| Southwest Power Pool, Inc. | Justin Hinton<br>201 Worthen Drive<br>Little Rock, ARKANSAS 72212<br>UNITED STATES<br>jhinton@spp.org | Nicole Wagner<br>Manager-Regulatory Policy<br>Southwest Power Pool Inc.<br>201 WORTHEN DR<br>LITTLE ROCK, ARKANSAS 72223<br>jwagner@spp.org |
| Southwest Power Pool, Inc. | | Tessie Kentner<br>Managing Attorney<br>Southwest Power Pool, Inc.<br>201 WORTHEN DR<br>LITTLE ROCK, ARKANSAS 72223<br>tkentner@spp.org |
| Southwest Power Pool, Inc. | | Angela H Martin<br>Paralegal<br>Southwest Power Pool, Inc.<br>201 Worthern Drive |

Little Rock, ARKANSAS 72223
amartin@spp.org

| | | |
|---|---|---|
| Southwest Power Pool, Inc. | ETariff Administrator<br>eTariff System Administrator<br>Southwest Power Pool, Inc.<br>201 WORTHEN DR<br>LITTLE ROCK, KANSAS 72223<br>UNITED STATES<br>FERCNotifications@spp.org | |
| Sunflower Electric Power Corporation | Adrienne Clair<br>Attorney<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>aclair@thompsoncoburn.com | Jenna E. Cliatt<br>Attorney<br>Thompson Coburn LLP<br>1909 K St NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA<br>jcliatt@thompsoncoburn.com |
| Sunflower Electric Power Corporation | | Ray Bergmeier<br>Manager of Transmission Policy<br>425 S 119th St. W<br>Wichita, KANSAS 67235<br>RBergmeier@sunflower.net |
| Sunflower Electric Power Corporation | | Ala Tamimi<br>Senior VP and Chief Operating<br>SUNFLOWER ELECTRIC COOP INC (KS)<br>425 S 119th St. W<br>WICHITA, KANSAS 67235<br>ATamimi@sunflower.net |
| Sunflower Electric Power Corporation | | Christine Aarnes<br>Sunflower Electric Power Corp<br>425 S 119th ST W<br>Wichita, KANSAS 67235<br>caarnes@sunflower.net |
| Western Farmers Electric Cooperative | Daniel Frank<br>Partner<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, N.W.<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20001-3980<br>UNITED STATES<br>DanielFrank@eversheds-sutherland.com | |
| Western Kansas Industrial Electric Consumers | James Zakoura<br>SMITHYMAN & ZAKOURA, CHARTERED<br>7500 COLLEGE BLVD STE 1400<br>OVERLAND PARK, KANSAS 66210<br>UNITED STATES<br>jzakoura@foulston.com | |
| Xcel Energy Services Inc. | bernard liu<br>Sr. Trans. Tariff Consultant<br>414 Nicollet Mall Fl 7<br>Minneapolis, MINNESOTA 55401<br>UNITED STATES<br>bernard.liu@xcelenergy.com | Timothy T Mastrogiacomo<br>Lead Assistant General Counsel<br>Xcel Energy Services Inc.<br>701 PENNSYLVANIA AVE NW STE 250<br>WASHINGTON, DISTRICT OF COLUMBIA<br>tim.t.mastrogiacomo@xcelenergy.com |
| Xcel Energy Services Inc. | | William C. Simmerson<br>Principal Attorney<br>Xcel Energy Inc.<br>701 PENNSYLVANIA AVE, NW, STE 250<br>WASHINGTON, DISTRICT OF COLUMBIA<br>william.simmerson@xcelenergy.com |

[ Back to Query Service List ]  [ Back to FERCOnline ]

*Title 18, U.S.C. 1001 makes it a crime for any person knowingly and willingly to make to any Agency or Department of the United States fictitious or fraudulent statements as to any matter within its jurisdiction.*

*FERC Online does not require the submission of personally identifiable Information (PII) (e.g. social security numbers, birthdates, and phone num FERC will not be responsible for any PII submitted to FERC Online, including any accidental or inadvertent submissions of PII.*

*This site contains information collections that are subject to the Paperwork Reduction Act (PRA). Among other things, the PRA requires FERC to p with an estimate of the average burden of completing the information collections on this site. Comments regarding the burden estimate or any oth these forms can be directed to FERC's Information Collection Branch at DataClearance@ferc.gov.*

*In addition, you are not required to respond to any collection of information unless it displays a currently valid Office of Management and Budget ( number. FERC provides the OMB Control Numbers of the information collections on this site at www.ferc.gov/information-collections.*

For any issues regarding FERC Online, please contact FERC Online Support or call Local: 202-502-6652 | Toll-free: 866-208-3676. Please include a c address, telephone number, and e-mail address.